UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEIA MONTGOMERY and KRISTEN MEGHAN KELLY,** | § § § | |
| *Plaintiffs,* | § § | **Civil Action No. _____** |
| v. | § § | |
| **DELTA AIR LINES, INC.** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs Leia Montgomery ("Montgomery") and Kristen Meghan Kelly ("Kelly") to make and file this, their *Original Complaint* against Defendant Delta Air Lines, Inc. ("Delta") for violations of the Air Carrier Access Act, violations of the Department of Transportation's regulations, and breach of contract.

### SUMMARY

Delta Air Lines, Inc., rather than enforcing common sense health guidelines, has taken an aggressive one-size-fits-all policy toward face coverings in violation of federal law and the Department of Transportation's guidelines. In the experience of Plaintiffs Montgomery and Kelly, even if a reasonable accommodation is offered, Delta will breach its contract and violate Federal law and regulations if a customer cannot wear a face mask.

### I.   PARTIES

1. Plaintiff Leia Montgomery is an individual living in Dallas, Texas who may be reached through her counsel of record the undersigned.

2. Plaintiff Kristen Meghan Kelly is an individual living in Hudsonville, Michigan who may be reached through her counsel of record the undersigned.

3.     Defendant Delta Air Lines, Inc. is a corporation with its headquarters in Atlanta, GA, operating in Texas. It may be served through its registered agent at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 or CSC located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## II.   JURISDICTION AND VENUE

4.     This Court has original jurisdiction under Section 1332 of Title 28. Plaintiff Montgomery lives in the Northern District of Texas, while Plaintiff Kelly lives in the Western District of Michigan. Defendant's headquarters are in Georgia but Defendant has operations in Texas and has a registered agent in Texas. The Plaintiffs seek damages in this case resulting from violations of the Air Carrier Access Act from Defendants which exceed $75,000 (diversity jurisdiction).

5.     Venue is properly founded in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial part of the events giving rise to the claims in this action occurred within the geographic area falling into the jurisdiction of the Northern District of Texas.

## III.   FACTS

**A.   Leia Montgomery**

6.     Montgomery frequently flies on Delta flights for work and recreation.

7.     She has flown on numerous flights over the years without incident.

8.     Montgomery suffers from post-traumatic stress and claustrophobia due to a past event.

9.     Montgomery carries signed documentation provided by two physicians that describes her disabilities pursuant to the standards set by the Americans with Disabilities Act ("ADA").

10.    Given the nature of her disabilities, she is unable to wear a conventional face mask. As a result, she wears a face shield, hat, and scarf when travelling.

11.    On February 20, 2021, Montgomery attempted to complete the Delta Clearance to Fly process at check-in prior to boarding Delta flight #1336.

12. Montgomery provided her ADA documents to the gate agents. In a good-faith effort to comply with Delta's COVID-19 rules, she wore her face shield, hat, and scarf.

13. Delta's gate agents called a STAT-MD emergency physician to evaluate Montgomery's suitability for flight under Delta's policies.

14. STAT-MD is a private telemedicine company which provides services to Delta.

15. The STAT-MD emergency physician denied Montgomery's accommodation.

16. During the conversation, the physician told Montgomery that she did not need to read her notes or show her paperwork to him.

17. He further instructed that she did not need to tell him her prescription nor have him verify her physician's signed notes.

18. The physician told Montgomery that her condition was not on Delta's list of conditions qualifying for a mask exemption, and if she had a problem, she should take it up with Delta.

19. After termination of the call, the gate agents told her that it was "too bad" that her condition "didn't count."

20. Montgomery then offered to make additional accommodations, including covering her hat with her scarf like a veil in addition to wearing her face shield.

21. The agents rejected the sufficiency of her additional accommodations and told Montgomery that she was being placed on Delta's no-fly list, leading to additional trauma and embarrassment.

**B.**     **Kristen Meghan Kelly**

22. Plaintiff Kristen Meghan Kelly is a veteran of the United States Airforce.

23. Kelly carries medical records and proof of her disability in addition to other medical documentation explaining that face coverings cause her body to produce a cardiac arrhythmia

response. The documentation also describes how her episodes of post-traumatic stress disorder (PTSD) produce cardiac events.

24. Prior to Kelly's attempt to fly, Delta had approved Kelly to fly without a mask due to a severe disability stemming from a violent event suffered while on active duty in the military. Kelly also underwent a COVID-19 saliva test which indicated she was COVID-negative.

25. Despite Delta's prior clearance and advance notice of Kelly's disability, the medical documentation Kelly carried on her person, and the fact that Kelly had tested negative for COVID-19 via a saliva test, Delta gate agents denied her access to the flight and referred her to a telemedicine STAT-MD physician for determination of her exemption to the mask policy.

26. The STAT-MD physician required Kelly to divulge the entire background of her disability, including a recitation of the sexual assault she suffered while in the military. This was done in the presence of the passengers on her intended flight, as they had been de-planed.

27. For the next several hours, Delta gate agents referred Kelly to numerous levels of Delta management to determine if Kelly's disability caused by severe sexual assault exempted her from mandatory masking, despite prior clearance.

28. This experience has caused Kelly to suffer extreme emotional trauma.

## IV.     ARGUMENT AND AUTHORITIES

### Claim 1 — Violation of the Air Carrier Access Act

*i. Legal Standard*

29.     Under § 382.3 of the Air Carrier Access Act, an individual with a disability is defined as "any individual who has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment."

30.     Air Carrier Access Act § 382.11(a)(1) instructs airlines, stating that a carrier "must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation."

31.     The 5th Circuit Court of Appeals determined in *Bynum v. Am. Airlines, Inc.* that, "In *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991), this court specifically held that the ACAA provides a private right of action. *Shinault* has not been overruled even though other circuits have reached a different conclusion." *Bynum v. Am. Airlines, Inc.*, 166 Fed. Appx. 730, 733 (5th Cir. 2006).

32.     The 5th Circuit Court of Appeals holding in *Bynum v. Am. Airlines, Inc.* was most recently upheld in the Northern District of Texas in *Stokes v. Southwest Airlines* when it held,

> "However, in a case decided after *Sandoval*, the Fifth Circuit stated, "[i]n *Shinault* . . . this court specifically held that the ACAA provides a private right of action. *Shinault* has not been overruled even though other circuits have reached a different conclusion." In accordance with Fifth Circuit precedent, the court concludes that a private cause of action exists under the ACAA."

*Stokes v. Sw. Airlines*, No. 3:16-CV-2357-G, 2017 U.S. Dist. LEXIS 56556, at *7 (N.D. Tex. Apr. 13, 2017).

*ii. Application*

33. Montgomery's medical disability meets the standard of a disability as established by the ACAA § 382.3. She has a valid disability, which is documented by a physician, requiring Delta to reasonably accommodate her.

34. Montgomery offered a reasonable alternative to a face mask in a veil and face shield, but Delta refused to accommodate her.

35. Kelly's medical disability meets the standard of a disability under the ACAA § 382.3. She has a valid disability documented by a physician, which requires Delta to reasonably accommodate her.

36. Delta Air Lines, Inc. violated the Air Carrier Access Act by denying Plaintiffs access to air travel on the grounds that it did not find their disabilities valid. Therefore, Plaintiffs pray this Court grant Plaintiffs damages in the amount of $500,000.00 to Leia Montgomery and $500,000.00 to Kristen Meghan Kelly for their willful violations of the ACAA and emotional distress caused by their deliberate actions.

**Alternative Claim — Violation of the Americans with Disabilities Act**

37. If this Court determines the Air Carrier Access Act does not provide a private right of action, Plaintiffs reserve the right to plead a cause of action for violation of the Americans with Disabilities Act.

38. Under Title III of the Americans with Disabilities Act, "[i]t shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. 12182(b)(1)(A)(i).

### Claim 2 — Violation of the Dep't of Transportation's Mask Exemption Regulations

*i. Legal Standard*

39. Additionally, Executive Order 13988 of January 21, 2021, on Promoting COVID-19 Safety in Domestic and International Travel, vests agencies, including the Department of Transportation with authority to create mask exemptions. The Department of Transportation has adopted exemptions in accordance with footnote 8 of the CDC's Mask Order Requiring Facemasks in Transportation, outlining procedures governing how passengers requesting an exemption are to be treated. Plaintiffs provided medical documentation from licensed medical providers in accordance with those requirements.

*ii. Application*

40. Delta refused to accept the valid documentation of Montgomery's disability and demanded that she wear a face mask. In the spirit of compliance, Montgomery offered the reasonable alternative of a face shield and veil, but Delta refused to accommodate her.

41. Similarly, Delta refused to accept the validity of Kelly's disability and provide her necessary accommodations pursuant to the Department of Transportation's guidelines.

### Claim 3 — Breach of Contract

*i. Legal Standard*

42. Whether a contract exists involves both questions of fact—such as the intent of the parties—and questions of law—such as whether the facts as found constitute a contract. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 959 (5th Cir. 1999).

43. The elements for breach of contract are (1) a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's failure to perform the contract, and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007).

    ii. *Application*

44.    Plaintiffs are proper parties to sue for breach of contract.

45.    Each Plaintiff had a valid and enforceable agreement with Delta which included a promise by Delta to transport each Plaintiff to her destination airport in exchange for funds.

46.    Each Plaintiff performed under the agreement or was excused from performing her obligations under the agreement, but Delta failed to perform under the agreement.

47.    Defendant breached the agreement by failing to accommodate Plaintiffs pursuant to federal law and regulation and by denying them access to the service agreed to under contract.

48.    As a result of Defendant's breach, Plaintiffs have suffered damages within the jurisdictional requirements of this court.

### Claim 4 — Public Disclosure of Private Facts

    i. *Legal Standard*

49.    In order to recover damages for the disclosure of private facts, a person must prove that: (1) publicity was given to matters concerning his or her private life, (2) the matter publicized is not of legitimate public concern, and (3) the publication of those matters would be highly offensive to a reasonable person of ordinary sensibilities. *Industrial Foundation of the South v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 682-85 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

    ii. *Application*

50.    Defendant publicly disclosed private facts about Plaintiff Kelly when it forced Kelly to publicly divulge sensitive information regarding her history of sexual assault and resulting trauma in the presence of the passengers on her intended flight.

51.    Defendant similarly publicly disclosed private facts about Plaintiff Montgomery when it forced her to divulge sensitive information related to her medical condition and history of trauma in the presence of the public at the flight gate.

### Claim 5 — Intentional Infliction of Emotional Distress

*i. Legal Standard*

52. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendants actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

53. Whether conduct is extreme and outrageous for the purpose of intentional infliction of emotional distress is generally a question of law. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005).

*ii. Application*

54. Defendant intentionally inflicted emotional distress upon Plaintiff Montgomery when it publicly refused to acknowledge and accommodate her verified medical condition and indicated to Montgomery that she had been placed on Delta's no-fly list.

55. Defendant intentionally inflicted emotional distress upon Plaintiff Kelly when it refused to recognize and accommodate her verified medical condition, and instead opted to force Kelly to publicly divulge sensitive information regarding her history of sexual assault and resulting trauma in the presence of the passengers on her intended flight.

### Alternative Claim — Negligent Infliction of Emotional Distress

56. If this Court determines Defendant did not act with requisite intention to satisfy a claim of intentional infliction of emotional distress, Plaintiffs reserve the right to plead a cause of action for negligent infliction of emotional distress in the alternative.

### Claim 6 — Declaratory Relief

*i.   Legal Standard*

57. This Court has authority to grant declaratory relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

58. Plaintiffs incorporate the above paragraphs 29-32 and 38 of this Complaint regarding the Air Carriers Access Act and the Americans with Disabilities Act.

*ii.   Application*

59. Plaintiffs provided medical documentation of their disabilities to Defendant and requested reasonable accommodation in the form Defendant allowing a face shield or other reasonable alternative in place of a mask due to Plaintiffs' inability to wear masks due to their disability.

60. Defendant discriminated against Plaintiffs when it refused to provide reasonable disability accommodations in the form of allowing face shields or other reasonable alternatives.

61. Therefore, Plaintiffs request that this court issue a declaration that a face shield is a reasonable accommodation in the case that an individual is unable to wear a face mask for medical reasons, and Defendant's refusal to allow such accommodation was in violation of the Air Carriers Access Act or in the alternative the Americans with Disabilities Act.

## V.   DAMAGES

62. Leia Montgomery suffered emotional and economic damages in excess of $500,000.00 as a result of Defendant's intentional infliction of emotional distress, breach of contract, and violation of federal law.

63. Kristen Meghan Kelly suffered emotional and economic damages in excess of $500,000.00 as a result of Defendant's intentional infliction of emotional distress, breach of contract, and violation of federal law.

## VI.   CONDITIONS PRECEDENT

64.   All conditions precedent to bringing this suit have been met.

## VII.   ATTORNEY'S FEES

65.   Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein based on the ADA, her breach of contract claim, among other rationale, including all fees necessary in the event of an appeal of this case to the 5th Circuit Court of Appeals and the Supreme Court of the United States.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Leia Montgomery and Kristen Meghan Kelly respectfully pray this Court cite Defendant to appear, answer, and, on final trial, that Plaintiffs be awarded a judgment against Defendant for the following:

a) Damages for Montgomery in excess of $500,000.00;

b) Damages for Kelly in excess of $500,000.00;

c) Reasonable attorney fees;

d) Costs of court;

e) Post-judgment interest at the lawful rate; and

f) All other relief to which Plaintiffs may be entitled in law and equity.

Respectfully submitted,

*/s/Warren V. Norred*
Warren Norred, TX Bar 24045094
Norred Law, PLLC
515 E. Border, Arlington, TX 76010
817-704-3984 O; 817-524-6686 F
wnorred@norredlaw.com
Attorney for Plaintiffs