**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION**

| | | |
|---|---|---|
| **LEIA MONTGOMERY** | § | |
| **and KRISTEN MEGHAN KELLY** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **Cause No.: 3:21-cv-02715-C** |
| | § | |
| **DELTA AIRLINES, INC.,** | § | |
| *Defendant*. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

COME NOW Plaintiffs Leia Montgomery and Kristen Meghan Kelly (collectively "Plaintiffs"), filing this response and objection to the Motion to Dismiss ("Motion," Doc. 28) filed by Defendant Delta Airlines, Inc. ("Defendant").

Plaintiffs' Complaint shows their claims are not preempted by federal law and that Plaintiffs are entitled to at least ask this Court for relief for Defendant's conduct.

Besides showing that federal law does not so preempt Plaintiffs' claims, Plaintiffs also meet Defendants argument that the ACAA has no private right of action does not inexorably lead to a conclusion that declaratory action claims are not available to Plaintiffs.

Contents

**I. STANDARD OF REVIEW**........................................................................................................ 2

**II. ARGUMENTS AND AUTHORITIES** ................................................................................. 3

**IV. PRAYER** ............................................................................................................................... 15


Cases

*City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 644 (1973) (J. Rehnquist, dissenting) ................................................................................................................................ 11

*Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*, No. CV 12-105-H-CCL, 2013 U.S. Dist. LEXIS 113479, at *29 (D. Mont. Aug. 12, 2013). .......................................................... 10

Covino v. Spirit Airlines, Inc., No. 2:20-cv-01039-GMN-NJK, LEXIS 177300, 2021 WL 4248079, *6 (D. Nev. Sept. 17, 2021). ................................................................................... 10

*Dept. of Labor v. McConnell*, 305 Ga. 812, 818, 828 S.E.2d 352 (2019) ..................................... 9

*Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 532 (Tex. App.—Houston [1st Dist.] 2000, pet. denied.)................................................................................................................. 12

*Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682-85 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977). ..................................................................................................... 9

Mack Trucks, Inc. v. International Union, United Auto., etc., 671 F. Supp. 1027 (E.D. Pa. 1987), aff'd, 856 F.2d 579 (3d Cir. 1988)......................................................................................... 14

Maryland Casualty Co. v. Pacific Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1940). 15

*Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007)..................................................... 11

*Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 386 (5th Cir. 2003).................................. 14

St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994).................................................................. 14

*Stokes v. Southwest Airlines*, No. 3:16-CV-2357-G, 2017 U.S. Dist. LEXIS 56556, 2017 WL 1354099 (N.D. Tex. 2017). ..................................................................................................... 7

*United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969))........................................... 11

*Williams v. Voljavec*, 202 Ga. App. 580, 582 (415 S.E.2d 31) (1992) ...................................... 12

# I. STANDARD OF REVIEW

1.        According to the Federal Rules of Civil Procedure, a complaint should contain "a short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2).

"Each allegation must be simple, concise, and direct." *Id.* at 8(d)(1).

2.        The Supreme Court has explained that a complaint need only "give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 512 (2002). This notice "does not require pleading specific facts;" the complaint must simply "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Anderson v. United States HUD*, 554 F.3d 525, 528 (5th Cir. 2008) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

3.       Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. *See id.*

4.       Additionally, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The claims must include enough factual allegations "to raise a right to relief above the speculative level.". *Twombly*, 550 U.S. 544, 555 (2007).

5.       Thus, the facts in a complaint, accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* at 570).

6.        In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*

7.       This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements. *Twombly*, 550 U.S. at 545.

## II. ARGUMENTS AND AUTHORITIES

### A.  Plaintiffs' breach of contract claim is not preempted because it is based on a self-imposed contractual undertaking.

3.       Although the ADA precludes state regulation relating to the rates, routes, or services of air carriers, it does not shelter airlines from suits "seeking recovery solely for the airline's alleged

breach of its own, self-imposed undertakings." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (internal quotation marks omitted) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)). "'[S]tate-law-based court adjudication of routine breach-of-contract claims' is permissible so long as a court makes 'no enlargement or enhancement [of the contract] based on . . . state laws or policies external to the agreement.'" *Id.* (citing *Wolens*, 513 U.S. 219 at 232–33.)

4.      In its Motion, Defendant argues, "Plaintiffs' breach-of-contract claim does not fall under the narrow *Wolens* exception because it is not predicated on actual contractual language identified by Plaintiffs in the Second Amended Complaint." Doc. 28 at 10.

5.      However, Plaintiff is not required to plead specific facts in its complaint, such as the exact contractual language at issue, and is only required to give Defendant fair notice of the claim and the grounds upon which the claim rests. *Anderson*, 554 F.3d 525 at 528. Plaintiffs' Complaint gives Defendant notice that Defendant violated its own contractual undertaking by refusing transportation to Plaintiffs. Plaintiffs are not seeking to enhance or enlarge Delta's contract based on state policy and only want to hold it accountable under its own contract.

6.      Further, the contract of carriage, provided along with Defendant's motion to dismiss, states, "Delta will make every effort to accommodate a Person with a Disability and will not refuse to transport a person solely based on the person's disability, except as permitted or required by law." Doc. 28-1 at 7, Rule 6(A). As stated in *Wolens*, "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning of [the ADA]." 513 U.S. 219 at 228 (internal citations and quotation marks omitted). Thus, Delta has admitted to undertaking a specific promise to not only provide transportation to Plaintiffs but to accommodate their disability as well.

7.      Plaintiffs' Complaint demonstrates Plaintiffs were willing and able to comply with all reasonable accommodations in order to fly without wearing a mask, including undergoing testing and wearing a face shield. Defendant's staff still refused to allow Plaintiffs to fly, in breach of its own contractual undertaking.

8.      Moreover, Delta's refusal to transport Plaintiffs was not "permitted or required by law," as phrased in the contract. The executive order that Delta relies on states,  "[t]he heads of agencies may make categorical or case-by-case exceptions to policies developed under this section, consistent with applicable law, to the extent that doing so is necessary or required by law." Exec. Order 13998, *Promoting COVID-19 Safety in Domestic and International Travel*, 86 Fed. Reg. 7205 (Jan. 21, 2021). Thus, the resulting TSA order specifically exempted from the mask requirement persons "with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.)." Security Directive 1542-21-01, *Security Measures – face Mask Requirements*, (February 1, 2021). Thus, Defendant was not excused from transporting Plaintiffs under the contract because its refusal was not permitted or required under the "law" cited by Defendant.

9.      Lastly, Defendant's contract of carriage makes no mention of a requirement to complete its "clearance-to-fly" process, nor does Delta provide a list anywhere for the public to see what conditions it has decided will allow a person to exempt from wearing a mask. Defendant established a process upon which Defendants depended, and then Defendant changed its practices, which at that point Plaintiffs had learned to depend, constituting a breach of contract by the unannounced change of policy after tickets were purchased and Plaintiffs were in the process of boarding their plane.

10.     Plaintiffs' Complaint, as well as the contract of carriage provided by Defendant, have given Defendant fair notice of Plaintiffs' claim for breach of Defendant's self-imposed contractual undertaking. Thus, plaintiffs are entitled to relief for Defendant's breach of contract.

**B.  Plaintiffs' complaint successfully states a claim for public disclosure of private facts.**

      i.   *Plaintiffs' privacy claims (Public Disclosure of Private Facts) are not preempted by the Airline Deregulation Act.*

11.     While the Airline Deregulation Act (ADA) precludes state regulation related to the rates, routes, or services of air carriers, "ADA preemption is 'concerned solely with economic deregulation, not with displacing state tort law.'" *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 287 (5th Cir. 2002) (quoting *Hodges v. Delta Airlines*, Inc., 44 F.3d 334, 337 (5th Cir. 1995).

12.     Defendant seeks dismissal of Plaintiffs' Public Disclosure of Private Facts claims based on ADA preemption, arguing that "compliance with a federal mask mandate is directly related and not at all attenuated to the provision of air carrier 'service.'" Doc. 28 at 13–14. In support of its argument, Defendant cites *In re JetBlue Airways Corp. Privacy Litigation*, as well as *In re American Airlines, Inc. Privacy Litigation*.

13.     In *JetBlue*, a persuasive authority here, the court found the plaintiffs' claims that the defendant airline transferred the plaintiffs' personal data received from ticket sales "fit squarely" within the category of services preempted by the ADA. 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005). The court explained that the claim "represent[ed] a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers." *Id.*

14.     Similarly, in *American*, the plaintiffs sued American Airlines for disclosing their personal information received by the airline when booking tickets. 370 F. Supp. 2d 552, 555 (N.D. Tex. 2005). The court found the plaintiffs' state-law claims for invasion of privacy were preempted

"because they [had] a connection at least with American's ticketing service, including the reservation component." *Id.* at 564. The court went on to say that "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline." *Id.* But the court also explained there is a point in some situations "where the state law's regulation of the entity's conduct is too attenuated, remote, or peripheral to be related to an airline's services," which is exactly the present case.

15.     For example, in *Stokes v. Southwest Airlines*, when a family sued the defendant airline on behalf of the plaintiff, an autistic child, the court there found a pilot's actions were too attenuated to be considered services. *Stokes v. Southwest Airlines*, No. 3:16-CV-2357-G, 2017 U.S. Dist. LEXIS 56556, 2017 WL 1354099 (N.D. Tex. 2017). The plaintiff's claims included, among other things, disability discrimination resulting from the airline's negligence and Intentional Infliction of Emotional Distress (IIED), both stemming from the actions of a pilot who mocked the plaintiff while he was boarding his flight. *Id.* at *14. The court found that while the plaintiff's claims were "tangentially" related to the Southwest's boarding services, any such connection was too "'tenuous, remote, or peripheral' to warrant preemption under the [ADA]." *Id.* at *15 (quoting *Onoh*, 613 F. 3d at 599). In ruling for the plaintiff on those claims, the court pointed out that the pilot's conduct was not part of any contractual arrangement the plaintiff had with the airline and that plaintiff's claim would not significantly impact the airline industry. *Id.* at *17–18.

16.     The events here are not like the cases Defendant cites, which are related to the disclosure of personal data received in the ticket-booking process. In those cases, the actions were directly related to the purchase of airline tickets, a service provided by the airline. Here, Defendant's agents

forced both Plaintiffs to divulge personal information related to their past trauma and sexual assault in a high-pressure situation in the presence of other customers, causing Plaintiffs emotional distress and embarrassment. As put by the court in *Stokes*, the process here was "not part of any contractual arrangement" between the parties, as no provision in Defendant's contract of carriage states that the customer must divulge sensitive, private information in public to prove the existence of a disability. *Id.*

17.     Like the pilot's actions in *Stokes*, the conduct of Defendant's agents here was too attenuated to be related to its services. Plaintiffs' claims for Public Disclosure of Private facts are not an attempt to regulate the services provided by the airline. While Defendant argues its agent's actions were services because they related to compliance with the mask mandate, Defendant cannot credibly argue that when Congress contemplated "services" performed by airlines, it envisioned the act of making customers with PTSD divulge personal, sensitive information about their traumatic assaults to the public.

     *ii.    Plaintiffs' Complaint properly pleads the elements of a claim for Public Disclosure of Private Facts.*

18.     Defendant argues that Plaintiffs' cited case law does not support a claim for public disclosure of private facts and that Georgia law applies in this case.

19.     In support of Plaintiffs' privacy claims, Plaintiffs cite *Industrial Foundation of the South v. Texas Industrial Accident Board*. Doc. 27 at ¶ 43. This case states,

> . . . an injured party, in order to recover for public disclosure of private facts about himself, must show (1) that publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) that the matter publicized is not of legitimate public concern.

*Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682-85 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977). This case clearly sets out the elements of a claim for public disclosure of private facts.

20.     Moreover, to the extent Georgia law applies, the elements for Public Disclosure of Private Facts are identical in Georgia and Texas. *See Dept. of Labor v. McConnell*, 305 Ga. 812, 818, 828 S.E.2d 352 (2019) ("(a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; [and] (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.")

21.     Therefore, Plaintiffs' Complaint shows they are entitled to relief because their privacy claims are not preempted by the ADA and they have successfully pled the elements of Public Disclosure of Private Facts.

**C. Plaintiffs' claims of intentional and negligent infliction of emotional distress are not preempted by federal law.**

   *i.   Plaintiffs' claims are not preempted by the Airline Deregulation Act.*

22.     Like Plaintiffs' other tort claims, Defendant argues the ADA preempts Plaintiffs' IIED claims as well. As stated above, while in some cases, IIED may be preempted by the ADA, courts have allowed other IIED claims to move forward, as was the case in *Stokes*. 2017 WL 1354099. Likewise, here Plaintiffs should be allowed to move forward with their IIED claims because the conduct at issue is too attenuated to be considered "services" of the airline.

   *ii.   Plaintiffs' claims are not preempted by the Air Carrier Access Act.*

23.     Defendant argues Plaintiffs' claims are also preempted by the Air Carrier Access Act (ACAA), "which exclusively governs allegations of discriminatory or unfair treatment of passengers claiming a disability." Doc. 28 at 14–15. Defendant cites several authorities that are

not binding to support its claim, such as *Covino v. Spirit Airlines, Inc.* Doc. 28 at 15. However, the facts in these cases are distinguishable from the facts here.

24.     For example, in *Covino*, the plaintiff claimed "the [d]efendant intentionally caused her emotional and physical injury when [the defendant's] employees discriminated against her on the flight. *Covino v. Spirit Airlines, Inc*., No. 2:20-cv-01039-GMN-NJK, LEXIS 177300, 2021 WL 4248079, *6 (D. Nev. Sept. 17, 2021). The court found the plaintiff's discrimination claim was preempted because her claim was "inextricably intertwined" with her disability discrimination claim under the ACAA. *Id.* at *7.

25.     However, the court noted other cases where plaintiffs' IIED claims were not preempted by the ACAA because the claims were not *predicated* on the ACAA violations: "the *Gilstrap* decision found that the ACAA regulations were not a critical element of [the plaintiff's] emotional distress claims, which were based on behavior such as ground crew yelling at the plaintiff for not standing in line as they told her to do." *Id.* (internal citation and quotation marks omitted) (quoting *Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*, No. CV 12-105-H-CCL, 2013 U.S. Dist. LEXIS 113479, at *29 (D. Mont. Aug. 12, 2013).

26.     Here, the facts showing IIED claims are not inextricable from Plaintiffs' discrimination claims. Plaintiffs do not just allege that they were not allowed to fly due to their disabilities but that the Defendant's agents publicly humiliated Plaintiffs and made them divulge sensitive information related to their past trauma. Doc. 27 at ¶¶ 25, 33–35, 44–45, 48–49. These facts would support a claim of IIED even without Plaintiffs' disability claims under the ACAA.

27.     In sum, Defendant cites no binding authority holding that a plaintiff's IIED claims against an airline are preempted by the ACAA. Moreover, Plaintiffs' claims are not inexpiably intertwined with their ACAA claims. Thus, Plaintiffs' preemption claims are not preempted by the ACAA.

     *iii.*   *Plaintiffs' claims are not preempted by the Federal Aviation Act.*

28.    Defendant also argues that Plaintiffs' claims are preempted by the Federal Aviation Act

(FAA) "because they relate to air carrier decisions made for the purpose of enforcing FAA

requirements relating to aircraft passenger safety" and cites cases such as *Montalvo v. Spirit*

*Airlines* to support its argument. Doc. 28 at 15.

29.    The FAA was enacted by Congress "to create and enforce one unified system of flight

rules." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (internal quotation marks

omitted) (quoting *United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969)). "The

paramount substantive concerns of Congress in enacting the FAA were to regulate federally all

aspects of air safety, . . . and, once aircraft were in 'flight,' air-space management." *Id.* (internal

quotation marks omitted) (quoting *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624,

644 (1973) (J. Rehnquist, dissenting) (citations omitted)).

30.    Here, Plaintiffs' claims are not related to any subject matter potentially regulated by the

FAA. Plaintiffs' claims are not concerned with any regulation related to the aircraft itself or any

in-flight procedures; Plaintiffs were not even able to set foot on an airplane. If FAA preemption

were as broad as Defendant claims, cases like *Hodges*, where the court allowed the plaintiff to sue

Delta for personal injury that occurred in-flight resulting from Delta's negligence, would not be

able to move forward. *See* 44 F.3d 334.

     *iv.*   *Plaintiff has properly pleaded a claim for IIED.*

31.    Defendant argues Plaintiffs have not stated a claim for Intentional Infliction of Emotional

Distress, claiming that Plaintiffs' claims do not rise to the level of outrageous conduct necessary

for an IIED claim and that Defendant's staff were "merely attempting to determine whether

Plaintiffs could qualify for a mask-wearing exemption. Doc. 28 at 20.

32.    To determine whether a defendant's behavior could be considered extreme or outrageous enough to rise to the level of IIED, Both Texas and Georgia instruct that courts must consider the defendant's knowledge of a particular susceptibility or sensitivity the plaintiff may have to the alleged conduct. *See Fields v. Teamsters Local Union No.* 988, 23 S.W.3d 517, 532 (Tex. App.—Houston [1st Dist.] 2000, pet. denied.) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."); *See also Williams v. Voljavec*, 202 Ga. App. 580, 582 (415 S.E.2d 31) (1992) ("A defendant's knowledge of a plaintiff's particular susceptibility to injury from emotional distress is often critical in weighing the extreme and outrageous character of conduct . . . .").

33.     Here, Defendant's conduct did rise to the level of outrageous conduct. Defendant's agents not only discriminated against Plaintiffs but made them divulge personal information about past trauma they had experienced. Further, Defendant was aware each plaintiff had a special sensitivity, as each plaintiff was trying to receive an accommodation for a disability related to post-traumatic stress disorder (PTSD). Despite this knowledge, Defendant's staff chose to publicly humiliate Plaintiffs and force them to divulge details of their past trauma in the middle of the airport. Defendant's staff knew each plaintiff suffered from PTSD but persisted in their callous treatment of them anyway.

34.    Because Plaintiffs' tort claims are not preempted by federal law and because Defendant's conduct was extreme and outrageous, Plaintiffs' Complaint states a valid claim for IIED.

**D.  Defendant's own citations show that a federal declaratory judgment is appropriate.**

35.    Defendant attempts to rewrite Plaintiff's claims by asserting that Plaintiffs are generally challenging "the requirement that they wear a mask onboard Delta flights." Of course, Plaintiffs

are not generally challenging the mask rule, but only that a person who has a legitimate reason to not wear a mask may wear a substitute face shield. And Defendants have not denied that that there are conditions under which they permit individuals to wear face shields or not wear a mask, as Plaintiffs have alleged at para. 22 of their Amended Complaint.

36.     Defendant also asserts that the lack of a private right of action under the ACAA equates to a lack of jurisdiction to ask this Court to declare the rights of the parties with respect to each other, pursuant to the ACAA's requirements. But the Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Plaintiffs seek exactly that – may Delta ignore its previous practices and change them on the fly without notice and decide that a person must wear a face mask that has no specification or minimal thickness, but may not employ a face shield that may nearly be airtight?

37.     Defendants assert without authority that Plaintiffs had a regulatory means of complaining under 14 C.F.R. Part 382(e), and that regulation is the only route available to Plaintiffs. But that regulation nowhere indicates that it replaces and prohibits any suit that potentially is related to discrimination issues.

38.     Case law indicates that parties may employ declaratory judgment claims to fix the rights between litigants. For example, an employer was allowed to seek such relief under the Labor Management Relations Act (29 USCS §§ 141 et seq.) and Declaratory Judgment Act (28 USCS §§ 2201-02), when it was faced with dilemma of implementing terms a disputed collective bargaining agreement because one of principal goals of Declaratory Judgment Act is to allow party to have adjudication clarifying its rights in legal relationship without having to wait until his adversary should decide to bring suit and to act at his peril in interim. *Mack Trucks, Inc. v.*

*International Union, United Auto., etc.*, 671 F. Supp. 1027 (E.D. Pa. 1987), aff'd, 856 F.2d 579 (3d Cir. 1988).

39.     The Fifth Circuit has instructed that the "Declaratory Judgment Act, 28 U.S.C.S. § 2201(a), is an enabling act conferring discretion on courts rather than an absolute right on a litigant.

> "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."

*Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 386 (5th Cir. 2003).

40.     In *Sherwin-Williams*, the Fifth Circuit has confirmed a seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action from  St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994). These factors include: (1) whether there is a pending state action in which all of  the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. Id. at 590-91.

41.     In examining the Trejo factors, this Court can see that there is no pending state action, that the plaintiffs have filed this suit anticipating further issues when they try to fly, the plaintiff did no forum shopping to arrive in this Court, this Court is a convenient forum which serves the purposes of judicial economy, and the dispute is not being asked to construe a state judicial decree. Rather,

this Court is being asked to address the inconsistent means by which Delta enforces a federal mask mandate in hopes of fixing the litigants' relationship.

42.     As the Supreme Court has taught, "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.* v. *Pacific Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1940).*

43.     None of the cases cited by Defendant answer these more fundamental arguments but try to twist the "no private right" into "no judicial review. This Court is not obligated to take that position.

## IV. PRAYER

Plaintiffs pray this Honorable Court deny Defendant's Motion to Dismiss and grant Plaintiff all other relief, both general and special, at law and in equity, to which it may be entitled.

Respectfully submitted,

Norred Law, PLLC
By: */s/ Warren V. Norred*
Warren V. Norred
Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border Street; Arlington, Texas 76010
Tel. (817) 704-3984; Fax. (817) 524-6686
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE** - I certify that the above was served on all parties seeking service in the instant case via the Court's e-file system on January 13, 2022.

*/s/Warren V. Norred*
Warren V. Norred